THE NATIONAL BANK OF BLOOMINGTON, Special Adm'r of the Estate of Leo Peterson, Plaintiff, *v.* WINSTEAD EXCAVATING OF BLOOMINGTON, a/k/a Bob Winstead Excavating, Defendant and Third-Party Plaintiff-Appellee.— (UNITED FIRE & CASUALTY COMPANY, Third-Party Defendant-Appellant.)

Fourth District    No. 16545

Opinion filed March 30, 1981.

Thomas M. Barger, III, of Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, for appellant.

Mike McElvain, of Bloomington, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Third-party defendant United Fire & Casualty Company (United) appeals from a declaratory judgment entered against it and in favor of defendant and third-party plaintiff Winstead Excavating of Bloomington (Winstead Excavating) in the circuit court of McLean County on July 11, 1980. The judgment required United to defend Winstead Excavating in the original case brought against Winstead Excavating by plaintiff, National Bank of Bloomington, as administrator of Leo Peterson (Peterson) and, subject to policy limits, to pay any judgment obtained against it. We have jurisdiction because of the trial court's finding pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)). We reverse.

The case was tried upon an agreed statement of facts and the agreed consideration of the discovery depositions of three witnesses. Prior to June 19, 1975, United issued a policy of liability insurance to Winstead Excavating. The policy was in force on that date when the incident giving rise to the original suit allegedly took place. Winstead Excavating did not inform United of the incident until June 29, 1977, when a copy of a complaint served upon Winstead Excavating was taken to United's agent, Gerald Wilson. The complaint had been served on Winstead Excavating on June 20, 1977.

United refused Winstead Excavating's demand that it assume defense of the original case. United has continuously maintained that it was not required to tender the defense because, under the terms of the insurance policy, Winstead Excavating's failure to timely notify it of the incident relieved it of that obligation. The terms relied upon by United stated:

> "In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably attainable information with respect to the time, place and circumstances thereof, and the names and addresses of the insured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents *as soon as practicable*. (Emphasis added.)
>
> * * *
>
> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy."

The issue in this case is whether the trial court's determination that Winstead Excavating gave notice to United of the incident giving rise to plaintiff's suit "as soon as practicable" was erroneous as a matter of law. We conclude it was.

One of the depositions considered by the trial court was that of Melvin Probus in which he stated the following to have occurred on June 19, 1975. He was hauling dirt for a road construction project on Route 66. He drove the truck along an access road to the highway and, after making a complete stop, pulled onto the highway in the right driving lane. His emergency flashers were lit. Probus watched the rear view mirror and saw a truck approaching him from behind in the same lane. The truck "whipped up" behind him and flipped over in the median as it passed him on the left. Probus and other drivers stopped to see if the occupant of the damaged vehicle was injured. Probus spoke with a State Police officer and was told he could leave. Probus stated that on the day of the incident he reported what happened to Robert Winstead, owner and operator of Winstead Excavating.

The court also considered the deposition of Robert Winstead in which he admitted that Probus had told him about the incident on the day it occurred. Winstead indicated that Probus explained the incident to him in substantially the same manner as Probus related in his deposition. Winstead testified that he did not then report the incident to his insurer because he did not feel he or his vehicle were involved in the episode whereby plaintiff's vehicle was damaged. Winstead further stated that he forgot about the incident until four or five months later when he received a letter from somebody which indicated that he should contact his insurance carrier, but he still did not do so because he did not believe he was involved.

Winstead also admitted receiving a second letter from Peterson's collision insurance carrier which was a notice of subrogation lien and advised Winstead to contact his insurance carrier. A copy of the form which would have been sent then by Peterson's carrier to Winstead was admitted by stipulation. The record does not indicate upon what date that notice was sent to Winstead, but the parties agree that it occurred approximately 16 months after the accident. Winstead testified that upon receipt of the latest notice, he believed that based upon what Probus had told him, he still did not think he was involved in the incident in which plaintiff's vehicle was damaged and, accordingly, still did not report the incident to United.

The deposition of Frederick Thomas, Jr., the driver of Peterson's vehicle, was also before the court. It contained testimony by Thomas that he was driving along the highway, glanced for not more than two or three seconds at the dials and gauges upon his dashboard, and then looked up and saw the Winstead truck 100 feet ahead of him. Thomas maintained that he then swerved into the passing lane to avoid a collision and that his truck then jack-knifed, entered the median and sustained damage. He said the highway conditions at the time were dry and clear.

■■ Under liability insurance policies containing language similar to that of the instant policy, the insured has a duty to give timely notice to the insurer if the circumstances of an occurrence would suggest to a reasonably prudent person that a claim for damages covered by the policy might be asserted against the insured. (*Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 355 N.E.2d 1.) This requirement has been said to be met by an insured giving notice within a reasonable time after having knowledge of a possible covered claim for damages. (*Star Transfer Co. v. Underwriters at Lloyds of London* (1944), 323 Ill. App. 90, 55 N.E.2d 109.) We consider the key element of the requirement to notify to be the appearance to a reasonably prudent person that a claim covered by the policy may be brought against the insured and not the appearance that the insured, in fact, may be liable. To the extent that *H. H. Hall Construction Co. v. Employers Mutual Liability Insurance Co.* (1963), 43 Ill. App. 2d 62, 193 N.E.2d 51, implies to the contrary, we are in disagreement.

Under the facts of this case, the trial court could have properly concluded that Winstead Excavating was under no duty to notify United based on the information related to Winstead through Probus. That information indicated that plaintiff's vehicle made no contact with the Winstead vehicle. No indication was given that Probus was issued a traffic citation. Winstead was not required as a matter of law to have foreseen the likelihood that suit would be brought on a claim that Probus had pulled onto the highway too abruptly in front of the plaintiff's vehicle.

■■ The situation confronting Winstead Excavating changed when Winstead received notice advising him to contact his insurance carrier. Even upon receipt of the first notice, it would seem that any reasonably prudent person would foresee that a suit covered by United's policy was likely and either contact his attorney, as in *H. H. Hall Construction Co.*, or contact his liability carrier. We deem Winstead's failure to take such action even after receipt of the second notice was, as a matter of law, a failure to act with reasonable prudence. In making his own appraisal of liability, he acted at his peril.

Winstead Excavating maintains that in order for United to be relieved of responsibility to defend it must show some prejudice to have resulted to it from the tardiness of the notice given. In *Simmon v. Iowa Mutual Casualty Co.* (1954), 3 Ill. 2d 318, 322, 121 N.E.2d 509, 511, the court affirmed a judgment on a jury verdict relieving a liability insurer from liability because of the insured's failure to give timely notice. The court stated: "We are in agreement with the contention that lack of prejudice may be a factor in determining the question of whether a reasonable notice was given in a particular case yet it is not a condition which will dispense with the requirement."

The districts of the appellate court have not been uniform in the significance given to the question of prejudice to the insurer in subsequent cases of this nature. In *Kenworthy v. Bituminous Casualty Corp.* (1975), 28 Ill. App. 3d 546, 328 N.E.2d 588, the court for this district, citing *Simmon*, affirmed a judgment on a jury verdict against an insurer for damages for failure to defend. There, as here, the insured's incidence to the occurrence was not such as to put him on notice of the need to notify his insurer, and that information came to him 16 months later. As the *Kenworthy* insured had successfully defended the suit brought against him and was merely suing for expenses incurred in defense, there was every indication that the insured was not prejudiced at all, for if earlier notice had been given to it, it would still have had the expenses of defense.

In *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 388 N.E.2d 253, a summary judgment declaring a liability insurer to be free of responsibility to defend was affirmed by the appellate court for the Third District. The duty to notify had arisen at the time of the occurrence, but notice was not given until after the damaged property had been repaired. The court stated that prejudice to the insurer was a factor to consider and deemed the repair of the property prior to the notice to have impaired the insurer's investigation.

In the case before us, the damaged vehicle was repaired prior to the time the insured came under a duty to notify the insurer but, nevertheless, prejudice would inherently result from the impairment of the memories of witnesses and of the opportunity to obtain information as to other witnesses. We conclude that here, as in *Illinois Valley Minerals Corp.*, the insured failed, as a matter of law, to notify the insurer within a reasonable time.

For the reasons stated we conclude that United was entitled to a judgment declaring it not required to defend Winstead Excavating in plaintiff's suit against it. Accordingly, the judgment of the trial court is reversed and the case is remanded with directions for the entry of a judgment consistent with this opinion.

Reversed and remanded with directions.

TRAPP, P. J., and WEBBER, J., concur.