STATE OF NEW YORK, Plaintiff,

v.

LUDLOW'S SANITARY LANDFILL, INC., G. Kevin Ludlow, James Ludlow, and Ludlow's Sand and Gravel Company, Inc., Defendants.

Ludlow's Sanitary Landfill, Inc., G. Kevin Ludlow, James Ludlow, and Ludlow's Sand and Gravel Company, Inc., Third–Party Plaintiffs,

v.

United Auto Sales of Utica, Inc., Chesebrough–Ponds, Inc., Special Metals Corp., North Motor Equipment and Machinery Company, Inc., and Utica Cutlery, Inc., Third–Party Defendants.

Special Metals Corporation, Fourth–Party Plaintiff,

v.

Lumbermens Mutual Casualty Company and Certain Other Underwriters at Lloyd's, Fourth–Party Defendants.

No. 86–CV–0853.

United States District Court, N.D. New York.

May 26, 1999.

Battle Fowler Law Firm, New York City (William J. McSherry, Jr., of counsel), for Special Metals Corp.

Tressler Soderstrom Law Firm, Chicago, IL (Michael W. Morrison, of counsel), for Lumbermens Mutual Casualty Co.

### MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Presently before the Court are Fourth–Party Defendant Lumbermens Mutual Ca-

sualty Company's ("LMCC") motion pursuant to Fed.R.Civ.P. 56 seeking dismissal of the fourth-party complaint against it and Fourth–Party Plaintiff Special Metals Corporation's ("SMC") cross-motion for summary judgment striking LMCC's fourth affirmative defense that SMC's claims are barred under the pollution exclusion clause.

## I. BACKGROUND

SMC began operating a metal alloy production plan in New Hartford, New York in 1957. From the early 1960s until July 1979, SMC used Ludlow's Sand & Gravel Company ("Ludlow's") to dispose of various non-hazardous solid and liquid industrial waste materials from its vacuum melting, casting and finishing operations. Ludlow's hauled SMC's waste to a landfill that Ludlow's operated (the "site" or "landfill").

SMC used a fluid known as Aroclor 1254 ("Aroclor") in its diffusion and booster vacuum pumps. Aroclor contains polychlorinated biphenyls ("PCBs"), a hazardous substance. According to SMC, they had separate procedures to dispose of Aroclor, which was never knowingly sent to the site. In 1972, SMC stopped using Aroclor.

In 1983, the New York State (the "State") Department of Environmental Conservation ("DEC") investigated the Ludlow landfill. In February 1983, the DEC sent a letter to SMC inquiring about its use and disposal of PCBs.

As a result of the investigation of the site, a Remedial Action Master Plan ("RAMP") was prepared in October 1983 which SMC received in March 1984. The RAMP determined that SMC was a primary contributor of industrial wastes to the landfill. The report further stated that "[t]he primary hazardous component of the wastes on Ludlow landfill is PCBs. The origin of the PCBs is not known, but may have been the cooling oils known to be buried on the site." The RAMP also identified the presence of PCBs from Aroclor at the site.

On December 6, 1983, the State of New York sent SMC a letter identifying it as a potentially responsible party liable for the costs of response, removal and remediation and for damages to the natural resources at the landfill (the "PRP letter").[1] Upon receiving this letter, SMC forwarded it to the company's Manager of Facilities Engineering, John W. Haggerty ("Haggerty").[2]

Shortly thereafter, SMC hired legal counsel and an environmental consultant to investigate and respond to the PRP letter. In April 1984, SMC's environmental consultant was informed that the environmental authorities attributed the PCBs at the site to SMC.

In August 1984, SMC entered into a consent decree with the State of New York. Pursuant to the terms of the consent

---

1. The letter read, in its entirety, as follows:

In accordance with the provisions of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, et seq., the State of New York has determined that you may be responsible for the release or threatened release of hazardous substances at the above-referenced site. As a potentially responsible party, you may be liable for the present and future costs of response, removal and remediation and for damages to the natural resources of the State of New York at and around the referenced site.

In view of the foregoing, this letter constitutes a claim by the State of New York pursuant to 42 U.S.C. § 9612(a) for all costs, damages and claims recoverable now and in the future under federal and state law, including CERCLA. Unless, in a timely fashion, all investigative, removal and remedial work necessary at the site and its environs is performed and unless the State is reimbursed for all damages to its natural resources and for all past, present and future response, removal and remediation costs, this claim will not have been satisfied. In such event, the State of New York will quantify the costs of any such work and any such damages, and may pursue its claims under federal and state law through legal action.

2. Haggerty acted as the liaison between SMC and environmental authorities.

decree, SMC did not admit liability or responsibility for the landfill, but agreed to investigate the site. The consent decree did not affect any legal rights the State of New York had against SMC.

As a result of SMC's investigation, in November 1984, it learned that it was responsible for the PCBs at the site and that the PCBs came from the Aroclor. In fact, it was learned that Aroclor was disposed at the site during the entire time SMC used Aroclor, from 1967 to 1972.

On October 15, 1984, SMC sent LMCC a letter "to fulfill the notice conditions contained in [its] general liability policy." SMC was covered under two insurance policies issued by LMCC. Both policies contained a "notice of claim" provision providing that:

> If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons, or other process received by him or his representatives.

LMCC denied coverage claiming that SMC failed to give timely notice under the terms of the policies.

SMC filed a Fourth–Party Complaint against LMCC seeking coverage under the two policies. LMCC now moves pursuant to FED.R.CIV.P. 56 seeking dismissal of the Complaint on the ground that SMC failed to give timely notice under the terms of the policies. SMC cross-moves for summary judgment striking LMCC's fourth affirmative defense that SMC's claims for coverage are barred under the policies' pollution exclusion clauses.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, judgment may be entered in favor of the moving party if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all facts must be construed in favor of the nonmoving party. *Id.; Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995). Where the moving party has supported the motion by affidavits and/or documentary evidence, the nonmovant "may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [ ] rule [56], must set forth specific facts showing that there is a genuine issue [of material fact] for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.P. 56(e); *see BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996). With this standard in mind, the Court will now address the motions for summary judgment.

### B. Whether SMC Provided Timely Notice of a Claim

LMCC moves for summary judgment claiming that SMC failed to provide it with timely notice of a claim as required under the terms of the insurance policies. LMCC asserts that the December 1983 PRP letter constituted a claim against SMC, but that SMC failed to provide notice of the claim until October 1984, ten months later.

SMC responds that the PRP letter did not constitute a claim because it had not yet been determined at that time that SMC was responsible for the PCBs at the site. SMC also argues that the PRP was not sufficiently specific to constitute a notice of claim. SMC claims that, based on conversations with the State Attorney General's office, it had a *bona fide* belief that it was not responsible for any hazardous waste at the site. SMC further asserts that it was not aware that it was responsible for the PCBs at the site until November 1984, one month after it gave notice of a potential claim to LMCC.

Because the underlying facts are not in dispute, this matter is appropriate for summary judgment. The determinative issues are: (1) when SMC became aware of a claim against it, and (2) whether it then provided LMCC with timely notice of such claim.

▇ Under New York law, "compliance with the notice provisions of an insurance contract is a condition precedent to the insurer's liability." *American Ins. Co. v. Fairchild Industries*, 56 F.3d 435, 438 (2d Cir.1995); *White v. City of New York*, 81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993); *Kaliandasani v. Otsego Mutual Fire Ins. Co.*, 681 N.Y.S.2d 323, 324 (2d Dep't 1998). "If an insured fails to provide timely notice as required by the particular policy, then, absent a valid reason for the delay, the insurer is under no obligation to defend or indemnify the insured." *American Ins. Co.*, 56 F.3d at 438 (citing *Allcity Ins. Co. and Jimenez*, 78 N.Y.2d 1054, 1055, 576 N.Y.S.2d 87, 581 N.E.2d 1342 (1991)). "The burden is on the insured to show that a delay was reasonable under the circumstances." *Id.* (citing *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972)).

The following excerpt from *Fairchild* is instructive:

[T]he term "claim" would not seem to be a fertile ground for disputes.... [A] claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy.... A claim may be made without the institution of formal proceedings. Indeed, the pertinent provisions of the policies at issue distinguish between "a claim" and "a suit." A third person's assertion of liability is a claim, moreover, whether or nor there is reason to believe that there actually is liability. Unless the assertion is made in circumstances so unusual that they negate the possibility of a formal proceeding involving defense costs as well as liability, virtually any assertion of an exposure to liability within the risks covered by an insurance company is a claim.... A notice of claim provision [as opposed to a notice of occurrence provision] focuses on the actions of third parties and may be triggered by an unreasonable—even sanctionable—assertion of liability. We have thus noted that one harm caused by vexatious litigants who bring baseless lawsuits against lawyers is the need of those lawyers to notify their insurance carriers. An assertion of possible liability, no matter how baseless, is therefore all that is needed to trigger a notice of claim provision.

*Fairchild*, 56 F.3d at 439 (internal citations omitted).

Using this reasoning, the Second Circuit has stated that "[a] powerful argument can thus be made that [a PRP] letter ... [is] a claim ... within the notice provision of the relevant policies." *Fairchild*, 56 F.3d at 439. However, in *Fairchild*, the Second Circuit declined to hold that the PRP letter was a claim "because no New York case has as of yet addressed that precise issue." *Id.* at 440. The court concluded that the ongoing negotiations with the DEC "made it clear long before notice was actually given ... that [DEC] was specifically seeking to compel Fairchild to undertake efforts to remediate the [waste].... That was a claim even under a narrow—even unreasonably narrow—interpretation of the term." *Id.*

▇ Under the facts of this case and applying the above-state principles of law, it is clear that DEC has asserted a claim against SMC long before it gave notice to LMCC. First, SMC received the PRP letter in December 1983 which clearly stated that "you may be liable for the present and future costs of response, removal and remediation and for damages to the natural resources of the State of New York at and around the referenced site." Further, the PRP letter specifically stated that "this letter constitutes a claim by the State of

New York pursuant to 42 U.S.C. § 9612(a) for all costs, damages and claims recoverable. . . ." The letter continued to state that the claim "will not have been satisfied [unless] in a timely fashion, all investigative, removal and remedial work necessary . . . is performed and unless the State is reimbursed for all damages." The letter concluded that if the claim has not been satisfied, "the State of New York may hold you liable . . . through legal action." Although this letter did not specifically identify the specific harm attributable to SMC, it unequivocally demonstrated that the State of New York intended to hold SMC liable for the remediation and damage at the site. John Haggerty, who was then SMC's liaison with the environmental authorities, testified at deposition that he understood the PRP letter to be a claim against SMC. *See* Haggerty Dep. at 194–95. The PRP letter is compelling evidence of a claim against SMC by the State of New York. *See Aetna Casualty & Surety Co. v. Dow Chemical Co.,* 10 F.Supp.2d 800, 815 (E.D.Mich.1998) (requiring notice of claim within reasonable time of receipt of PRP letter); *Industrial Coatings Group, Inc. v. American Motorists Ins. Co.,* 276 Ill.App.3d 799, 809, 213 Ill.Dec. 317, 658 N.E.2d 1338 (1st Dist.1995) (same); *Transamerica Ins. Co. v. Interstate Pollution Control, Inc.,* 1995 WL 360460, at * 16 (N.D.Ill. June 16, 1995); *Monsanto Co. v. Aetna Casualty and Surety Co.,* 1993 WL 563245, at * 17 (Del.Super.Ct. Dec.21, 1993), *aff'd,* 653 A.2d 305 (Del.Supr.1994); *United States v. Cordova Chemical Co. of Michigan,* 825 F.Supp. 795, 814 (W.D.Mich.1993).

This conclusion is supported by the language of 42 U.S.C. § 9612(a) cited in the PRP letter. That provision provides that Superfund monies may not be sought unless a "claim is first presented . . . to any [ ] person known to the claimant who may be liable." 42 U.S.C. § 9612(a). Furthermore, many courts have found PRP letters equivalent to law suits for purposes of triggering an insurer's duty to defend. *See, e.g., Employers Ins. of Wausau v.*

*Petroleum Specialties Inc.,* 69 F.3d 98, 106 (6th Cir.1995); *American Policyholders Ins. Co. v. Nyacol Prods., Inc.,* 989 F.2d 1256, 1258 (1st Cir.1993), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994). Thus, a PRP letter should sufficiently constitute a claim thereby triggering the insured's duty to provide a notice of claim to the insurer. *See Aetna Cas. & Sur. Co., Inc. v. Pintlar Corp.,* 948 F.2d 1507, 1516 (9th Cir.1991) ("Unlike the garden variety demand letter, which only exposes one to a potential threat of future litigation, a PRP notice carries with it immediate and severe implications."). However, there are other facts in the present case that make it clear that the State was asserting a claim against SMC long before it gave notice of a claim to LMCC.

By March 1984, SMC had received the RAMP which discovered PCBs from Aroclor at the site and identified SMC as one of two primary contributors of industrial wastes to the landfill. Thus, SMC should have been aware at this time that the State viewed it as a likely source of PCBs at the site.

Next, an April 23, 1984 letter from O'Brien & Gere, SMC's environmental consultants, to SMC demonstrates that SMC knew that the State intended to hold it responsible for PCBs at the Ludlow site. That letter specifically stated that "[w]e are concerned about Ms. Washington's perception that the problem is PCBs and those PCBs are related to Special Metals' activities. [I]t will be necessary to make some decisions . . . [that] could impact Special Metal's liability for remedial cost at the . . . site."

Further, SMC entered into a consent decree with the State on August 24, 1984 whereby SMC agreed to conduct an investigation to determine the identity and extent of hazardous substances at the site and develop a feasibility study of remedial alternatives. Although SMC did not admit liability, the nature of the negotiations resulting in the consent decree should

have sufficiently apprised SMC that the State thought it to be responsible for dumping hazardous waste at the site and was seeking to hold it liable therefor. *See Fairchild,* 56 F.3d at 440 ("[T]he ongoing negotiations between Fairchild and the NYSDEC made it clear long before notice was actually given ... that NYSDEC was specifically seeking to compel Fairchild to undertake efforts to remediate [the site].").

The facts of this case demonstrate that the State had asserted a claim against SMC by April 1983 at the latest. By that time, it was clear that: SMC had dumped industrial waste at the site; PCBs had been identified at the site, see March 1984 RAMP; the PCBs were attributable to Aroclor, see *id.;* SMC used Aroclor; the State believed SMC to be responsible for the PCBs at the site, see December 1983 PRP letter and March 1984 RAMP; and that the State intended to hold SMC responsible for cleanup, remediation and damages to the environment, see December 1983 PRP letter, negotiations between the State and SMC. It is irrelevant that SMC continued to believe it was not responsible for dumping hazardous waste at the site. *Fairchild,* 56 F.3d at 439; *City of Utica, New York v. Genesee Management, Inc.,* 934 F.Supp. 510, 520 (N.D.N.Y. 1996). What is relevant is that a third party (*i.e.* the State of New York) made an assertion that SMC was liable to it for damages within the risks covered by the policies. *See Fairchild,* 56 F.3d at 439. Accordingly, by the plain terms of the policies, SMC had a duty to "immediately" provide a notice of claim to LMCC. Thus, the next question is whether SMC provided timely notice to LMCC.

■ As noted, SMC has the burden of showing the reasonableness of the delay. *Fairchild,* 56 F.3d at 438. Here, even assuming that the State did not assert a claim against SMC until April 1984, SMC did not provide notice to LMCC until October 1984, some six months later. SMC claims that it acted reasonably because it did not believe that it was responsible for the hazardous waste at the site. This argument is without merit because, as noted, "[a]lthough an insured may delay notice of *occurrence* based on 'a good-faith and reasonable belief that no liability covered by the policy will result,' the insured must give notice of 'an unreasonable—even sanctionable—assertion of liability.'" *City of Utica,* 934 F.Supp. at 520 (citing *Fairchild,* 56 F.3d at 439) (emphasis supplied). "An insured cannot excuse delay in giving notice of claim based on a believe of non-liability no matter how well-founded that belief may be." *Id.* at 521. Accordingly, SMC was obligated to give immediate notice to LMCC and has not met its burden of offering a reasonable excuse for the delay. Thus, the issue of reasonableness is a matter of law for the Court to decide. *Id.; See also Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979).

"Under New York law, delays for one or two months are routinely held 'unreasonable.'" *Fairchild,* 56 F.3d at 440 (citing cases). Here, SMC waited at least six months to provide notice. Such delay is unreasonable as a matter of law and excuses LMCC from liability. *See American Home Assurance Co. v. Republic Ins. Co.,* 984 F.2d 76, 78 (2d Cir.), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993) (delay of 36 days deemed unreasonable); *Rushing v. Commercial Casualty Ins. Co.,* 251 N.Y. 302, 304, 167 N.E. 450 (1929) (22 days); *Haas Tobacco Co. v. American Fidelity Co.,* 226 N.Y. 343, 345, 123 N.E. 755 (1919) (10 days); *Hartford,* 46 N.Y.2d at 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (two months); *Quinlan v. Providence Washington Ins. Co.,* 133 N.Y. 356, 362, 31 N.E. 31 (1892) (33 days); *Malca Amit New York, Inc. v. Excess Ins. Co., Ltd.,* 685 N.Y.S.2d 55 (1st Dep't 1999) (nine month delay); *Power Authority of State v. Westinghouse Elec. Corp.,* 117 A.D.2d 336, 342–43, 502 N.Y.S.2d 420 (1986) (53 days); *Government Employees Ins. Co. v. Elman,* 40 A.D.2d 994, 338 N.Y.S.2d 666 (1972) (29 days); *Vanderbilt*

*v. Indemnity Ins. Co.,* 265 A.D. 495, 496, 39 N.Y.S.2d 808 (1943) (28 days); *Reina v. United States Casualty Co.,* 228 A.D. 108, 239 N.Y.S. 196 (1930) (26 days), *aff'd,* 256 N.Y. 537, 177 N.E. 130 (1931); *Gullo v. Commercial Casualty Ins. Co.,* 226 A.D. 429, 434, 235 N.Y.S. 584 (1929) (13 days). Even if the Court did not find the State to have asserted a claim against SMC until August 1984, SMC failed to offer a reasonable excuse for its delay which, under the facts of this case, as noted, is unreasonable. *See id.*

Because LMCC is not liable under either of the policies, SMC's cross-motion for summary judgment is moot.

## III. CONCLUSION

For the foregoing reasons, LMCC's motion for summary judgment is GRANTED and the Complaint against it is DISMISSED in its entirety. SMC's cross-motion for summary judgment is DENIED.

**IT IS SO ORDERED**