INDUSTRIAL SUGARS, INC., Plaintiff-
Appellee,

v.

STANDARD ACCIDENT INSURANCE
COMPANY, Defendant-Appellant.

No. 14568.

United States Court of Appeals
Seventh Circuit.

Nov. 16, 1964.

Rehearing Denied Dec. 23, 1964.

Alfred F. Newkirk, Springfield, Ill., J.
D. Leritz, John B. Sharpe, St. Louis, Mo.,

Giffin, Winning, Lindner & Newkirk, Springfield, Ill., Leritz & Leritz, St. Louis, Mo., of counsel, for defendant-appellant.

G. William Horsley, Springfield, Ill., for appellee.

Horsley, Vespa & Lott, Springfield, Ill., of counsel, for plaintiff-appellee.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a diversity suit for a declaratory judgment, under 28 U.S.C. § 2201, that defendant, Standard Accident Insurance Company, under the Products Hazard coverage of its Comprehensive Liability Policy issued to plaintiff, Industrial Sugars, Inc., has the duty to defend Industrial against a counterclaim for damages based on a sale of Industrial's product.[1] The district court's judgment was against Standard, which has appealed. We think the court erred.

Industrial is a manufacturer of liquid sugar. On April 3, 1958, one of its employees by mistake used ten times the proportion of chlorine to be used with water in the cleansing formula in preparing to sterilize the sugar processing equipment. This same employee had made the same mistake on a prior occasion, but on that occasion the addition of water obviated any adverse effect upon the sugar. On the occasion before us, after the employee had consulted with another employee, he added water while using the overconcentrated solution. A batch of sugar was then processed and pumped into a storage tank with other liquid sugar. Deliveries were made from this storage tank on Friday, April 4, to three customers, including the Taylorville Pepsi-Cola Bottling Co.

Before Taylorville used any of the sugar an employee at Industrial's plant detected an off-taste in the sugar. The plant superintendent then made tests but detected nothing wrong. No notice of contamination was given to Taylorville. Two days later, on Monday, at about the time Taylorville was to use syrup made with the sugar, Industrial received word from one of the other two customers that the sugar was contaminated. Still no notice was given to Taylorville then, or later when the third customer also complained of contamination. These other two shipments were picked up and returned, but not Taylorville's.

On Wednesday Industrial's president and other officials decided to give no notice to Taylorville, but to have a "quiet investigation" made at the Taylorville plant by their sugar broker. For two days thereafter continuous taste tests at the Taylorville plant revealed no contamination, but then Taylorville customers began to complain of an off-taste in the Pepsi-Cola. Tests subsequently made by Taylorville revealed that the sugar was contaminated. When Industrial sued for the purchase price of this and other sugar, Taylorville counterclaimed for damages and Industrial requested Standard to defend it against the counterclaim, but Standard refused. This suit followed.

Plaintiff alleged in its pleadings that an accident occurred but failed to specify

---

1. By the terms of the policy the defendant is obligated to defend plaintiff against any suit for damages with respect to the insurance afforded by the policy and "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." Included within this coverage is Products Hazard, defined in the policy as

"goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured * * *."

This Products Hazard coverage expressly includes "a warranty of goods or products."

whether it occurred at its plant or at Taylorville's. Defendant answered, denying that an accident had taken place, and set up three special defenses: (1) that if an accident occurred it was at plaintiff's plant and not covered; (2) that there was no accident at Taylorville, but that the off-taste in Taylorville's product resulted from plaintiff's deliberate withholding of information; (3) that the overconcentrated solution was used by plaintiff at its plant not by accident but deliberately. Plaintiff replied, raising issues on the special defenses.

The district court concluded that an "accident" had occurred, within the meaning of the policy, resulting in the Taylorville claim; that plaintiff had performed its duties under the policy; and declared that defendant had the duty under its policy to defend plaintiff in the Taylorville action. The district court did not find specifically when and where the "accident" occurred, but the record indicates that the court thought it happened at Taylorville.

The decisive question on this appeal is whether the contamination of Industrial's product at its plant and the consequent damage to its customer at the latter's plant imposed a duty on Standard under its policy to defend Industrial against Taylorville's damage suit.

■ We do not find it necessary to decide whether the district court was correct in deciding that an accident had occurred or where the accident, if any, occurred. It is our opinion that even if an "accident" did occur within the coverage of the policy, the proximate cause of the damage to Taylorville was not the "accident" but the conduct of plaintiff in deliberately withholding from Taylorville the knowledge which plaintiff had of contamination of its sugar. We think that that deliberate risk of harm is not within the terms of the policy and that by taking the risk that no damage would result to Taylorville, plaintiff precluded itself from demanding that the insurer defend or indemnify it against the damage which occurred.

■■ Insurance is defined generally as "a contract to pay a sum of money upon the happening of a particular event or contingency, or indemnity for loss in respect of a specified subject by specified perils; that is, an undertaking by one party to protect the other party from loss arising from named risks, for the consideration and upon the terms and under the conditions recited." 1 Couch, Insurance 2d § 1:2 (1959). Since it is a contract, only those risks are covered by the policy which were contemplated by the parties when the contract was made. The provisions of the policy here under consideration clearly limited the risks covered to losses "caused by accident." Expressly excluded from coverage is any "liability assumed by the insured under any contract or agreement," with the exception of warranties of goods or products under the Products Hazard coverage.

In the case of Canadian Indemnity Co. v. Andrews & George Co., (1952) Can. Sup.Ct. 4 D.L.R. 690, reversing (1952) Br.Col.Ct.App. 1 D.L.R. 180, cited by the parties, both the British Columbia Court of Appeals and the Supreme Court of Canada, in construing a policy similar to the one in suit, said that the term "accident" referred to in such a policy means some unforeseen and unexpected happening which results in some defect in the product of the insured. The manufacturer is not insured against all losses which it may incur as a result of some defect in the manufacture of the product, but only for those defects caused by accident and resulting in damage after the manufacturer has relinquished possession of the product.

■ We hold that even if the contamination was the result of an "accident," covered by the policy, plaintiff's intentional failure to notify Taylorville of the likelihood of contamination of the sugar after it had become known to plaintiff's plant superintendent and highest officers, was misconduct which was the cause of the damage, and that the "accident" did not cause the damage. To allow plaintiff, with the knowledge

that it had of contamination in the batch of sugar from which the Taylorville shipment was taken, to take a chance that the contamination would not be discovered and then impose the loss upon the insurer when the gamble failed would be to countenance insurance against one's deliberate misconduct. A contract of insurance to indemnify a person for damages resulting from his own intentional misconduct is void as against public policy and the courts will not construe a contract to provide such coverage. Isenhart v. General Casualty Co., 233 Or. 49, 377 P.2d 26 (1962), Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala. 226, 146 So. 387 (1933), 9 Couch, Insurance 2d § 39:15 (1956).

 We think that plaintiff had the duty to prevent the harm which occurred.

"It is the general rule that one who is injured by the wrongful acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and, to the extent that his damages are the result of his active and unreasonable enhancement thereof, or due to this failure to exercise such care, he cannot recover. * * * He must do nothing to aggravate his loss, but must do all he can to mitigate or reduce it."

Commodity Credit Corp. v. Rosenberg Bros. & Co., 243 F.2d 504, 511 (9th Cir. 1957). Since this is so, we think an insured who is able to prevent damages entirely should be under a duty to do so. Good faith requires no less. The widespread adoption of the Uniform Commercial Code, § 1–203, imposing an obligation of good faith in the performance of every contract or duty within the Code, indicates a growing acceptance of this notion in commercial transactions. We see no reason why a similar obligation of good faith should not also be imposed upon plaintiff in this case. Farnsworth, Good Faith Performance and Commercial Reasonableness Under the Uniform Commercial Code, 30 U.Chi. L.Rev. 666, 679 (1963).

For the reasons given the judgment is reversed and the cause remanded with directions to enter judgment for defendant's costs.