**SCHERING CORPORATION, Plaintiff–Appellant,**

v.

**ILLINOIS ANTIBIOTICS COMPANY, a corporation, and Irving S. Rossoff, individually and doing business as Illinois Antibiotics Company, Defendants–Appellees.**

Nos. 94–3722, 94–3894.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1995.

Decided Aug. 4, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 12, 1995.

Steven M. Kowal (argued), George M. Burditt, Burditt, Burditt & Radzius, Chicago, IL, for Schering Corp.

David F. Schmidt (argued), Joseph J. Hasman, Peterson & Ross, Chicago, IL, Thomas W. Lacy, Taylorville, IL, for Illinois Antibiotics Co., Irving S. Rossoff.

Before POSNER, Chief Judge, and COFFEY and ROVNER, Circuit Judges.

POSNER, Chief Judge.

This appeal requires us to consider the standard for interpreting an injunction when a judgment of civil contempt is sought. The facts are undisputed. Gentamicin sulfate is an antibiotic primarily used for the treatment of diseases in pigs and other farm animals. It has two subordinate uses that are not therapeutic: laboratory testing, and preserving vaccines. The drug is manufactured in powdered form but is often dissolved in distilled water before being used whether in its therapeutic or in its other uses. Anyone who wants to manufacture and sell the drug for a therapeutic use must obtain a license from the Food and Drug Administration. Schering is the only firm in the United States that has such a license.

Defendant Rossoff is a veterinarian in central Illinois who Schering years ago discovered was selling gentamicin sulfate in its solution form for therapeutic use. In 1983 Schering brought suit against Rossoff and his company, Illinois Antibiotics Company, under a variety of federal and state statutes. The suit was resolved (so Schering prematurely believed) two years later by the entry of a consent decree that permanently enjoined the defendants "from selling or distributing gentamicin sulfate reagent solution for therapeutic use in animals unless such reagent solution is expressly approved for such use by the FDA," but that further provided that "except for the express conduct which is the subject of the injunctive order . . . nothing contained herein shall be construed to limit [the defendants'] freedom, in any way, to . . . engage in the sale, manufacturing, or distribution of drugs, pharmaceuticals, chemicals or related products, whether involving gentamicin, reagent products, or

otherwise." The term "reagent" refers to the use of gentamicin sulfate in the laboratory and for preserving vaccines. The consent decree left Rossoff and his company free to make and sell gentamicin sulfate solution in its "reagent" uses.

The defendants continued, however, to sell the solution for therapeutic uses, and in 1986 Schering sought to have them held in contempt. That contempt proceeding was resolved, as is not uncommon, see, e.g., *Blankenship & Associates, Inc. v. NLRB*, 54 F.3d 447 (7th Cir.1995), by the entry of a further consent order, which supplemented the original order by requiring the defendants to state, in response to any inquiry or order from a prospective purchaser or user, or in filling any order, that gentamicin sulfate reagent solution is not intended or recommended for any therapeutic use.

The defendants, without bothering to obtain a license from the FDA (the license would have allowed them to sell gentamicin sulfate for therapeutic use to their hearts' content without violating the injunction), continued selling the drug for therapeutic uses. But in an effort to get around the injunction they sold it in powdered rather than liquid form. There cannot be any doubt that they were deliberately seeking to circumvent the injunction. Rossoff would instruct the purchasers (veterinarians or livestock producers) to dissolve the powder in water when the particular therapeutic application called for the solution rather than for the powdered form of the drug. He concealed the therapeutic purpose of these sales in his billing statements and even instructed his customers if asked to fabricate a nontherapeutic purpose. Between 1987 and 1990 the defendants sold more than $2 million worth of gentamicin sulfate, almost all of it for therapeutic uses, as Rossoff well knew—he advised his customers on those uses. These sales yielded the defendants a profit of some $1.4 million, which Schering seeks to recover as a remedy for what it contends is the defendants' violation of the injunction. In 1991 the federal government brought criminal proceedings against Rossoff for selling gentamicin sulfate for therapeutic uses without a license from the FDA. He was acquit-

ted on some counts, the jury hung on the others, and the prosecution was abandoned. In 1993 the government seized a quantity of gentamicin sulfate from Rossoff. The seizure proceeding was resolved (so far as any dispute with Rossoff can be said to be resolved) by his agreeing to confine his sale of gentamicin sulfate to his own veterinary practice.

■ The district judge found, and the defendants have made no effort to show that his findings are erroneous, let alone clearly so, that the defendants engaged in a massive, deliberate, illegal, and unscrupulous effort to circumvent the consent decree, in the process endangering animal and possibly even human health. The details of Rossoff's conduct are shocking, but they are not germane. The only issue is whether by selling gentamicin sulfate only in powdered form he succeeded in avoiding an injunction that, read literally, prohibits only the sale of gentamicin sulfate after it has been dissolved in water. The district judge held that the injunction could not be read broadly enough to reach the powdered form, and so he dismissed the contempt proceeding.

In defending this result, the defendants point us to language in a number of judicial opinions to the effect that injunctions must be construed narrowly and ambiguities resolved against a finding of contempt. E.g., *NBA Properties, Inc. v. Gold,* 895 F.2d 30, 32 (1st Cir.1990); *In re Baldwin–United Corp.,* 770 F.2d 328, 339 (2d Cir.1985); 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2955, p. 538 (1973). The thinking behind these opinions is that the judicial contempt power, even in its civil form, is a "potent weapon," *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967), the use of which ought therefore to be confined to situations in which the defendant had clear notice that what he was doing violated a court order. That is why Rule 65(d) of the Federal Rules of Civil Procedure requires that injunctions be "specific in terms" and "describe in reasonable detail ... the act or acts sought to be restrained"; and it would not do to render general an injunction that was specific by free-wheeling interpretation of its terms.

■ We have no quarrel with the general rule that injunctions should be construed narrowly in order to make sure that the persons subject to an injunction have clear notice of what they are prohibited from doing. We intend no departure from the rule. But like most legal rules, the rule of strict construction of injunctions should not be pressed to a dryly logical extreme. If narrow literalism is the rule of interpretation, injunctions will spring loopholes, *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1431 (7th Cir.1985); cf. *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1547–48 (11th Cir.1986), and parties in whose favor injunctions run will be inundating courts with requests for modification in an effort to plug the loopholes. It is enough protection for defendants if close questions of interpretation are resolved in the defendant's favor in order to prevent unfair surprise. This is the standard implicit in the cases that discuss the specificity required of an injunction by Rule 65(d), cases illustrated by *United States v. Kaun,* 827 F.2d 1144, 1153 (7th Cir.1987); *Williams v. City of Dothan,* 818 F.2d 755, 761 (11th Cir.1987); *Combs v. Ryan's Coal Co.,* 785 F.2d 970, 978–79 (11th Cir.1986), and *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 646 F.2d 800, 809 (2d Cir.1981), as well as in the cases cited earlier in which the meaning of the injunction is the issue. The requirement of clear notice is the same whether the question is the clarity of the injunction in the abstract or the applicability of the injunction to particular conduct. See, e.g., *Combs v. Ryan's Coal Co., supra,* 785 F.2d at 978–79.

When Schering first discovered Rossoff's unauthorized sales of gentamicin sulfate, Rossoff was selling the drug in solution and calling the solution a "reagent" solution, the better to put Schering and the FDA off the scent. So that was the term used in the consent decree. We do not understand the defendants to be arguing that the term "reagent" has any significance. *Any* sale of gentamicin sulfate in solution form is forbidden, they concede, if it is for a therapeutic use and the defendants remain unlicensed.

Suppose Rossoff had simply allowed the water in the solution to evaporate, producing the powdered form, and had sold that for therapeutic use. Would so trivial a change in form get him out from under the decree? At argument we asked the defendants' lawyer whether, if the decree had forbidden the sale of gentamicin sulfate in powdered form and Rossoff had dissolved it in water before selling it, he would not have violated the decree; and the lawyer acknowledged that maybe that would have been a violation. We cannot see the difference between dissolving the powder in water, thus transforming the powder into a liquid, and extracting the powder from the liquid by evaporation.

■ These hypothetical cases, and our real case as well, are much like the fireworks case on which Schering quite properly relies. *United States v. Christie Industries, Inc.*, 465 F.2d 1002 (3d Cir.1972). An injunction forbade the sale of fireworks kits; the defendant sought to evade it by selling the components of the kits for easy assembly into kits by the purchasers; the attempt was held to violate the injunction. *Id.* at 1009–11. The principle, which we think a sound guide to the probable intention behind the words in an injunction, is that a literal change in form, as from liquid to solid or solid to liquid or liquid to gas or gas to liquid, does not affect the scope of an injunction that prohibits the sale of the chemical in question in one of its forms. This is but an instance of a general principle of interpretation, applied even in criminal cases, where a kit of firearm parts that can readily be assembled into an operable firearm is treated as a firearm for purposes of the gun laws. *United States v. Drasen*, 845 F.2d 731, 737 (7th Cir.1988); *United States v. Poulos*, 895 F.2d 1113, 1120 (6th Cir.1990); *United States v. Luce*, 726 F.2d 47 (1st Cir.1984); but cf. *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992). A cousin is the principle of "substance over form" applied in tax cases. See, e.g., *Yosha v. Commissioner*, 861 F.2d 494 (7th Cir. 1988).

■ Troubled by the fireworks precedent, the defendants retreat to the part of the decree that guarantees to them full freedom of action, including sale of gentamicin products, outside the prohibition relating to gentamicin sulfate solution. But that part of the decree cannot be taken at face value, for so taken it would authorize the defendants to sell gentamicin sulfate for therapeutic uses without a license from the FDA and therefore in violation of federal law. If that is what the decree meant, the district judge would not have approved it. Judges are not authorized to disobey the law in issuing an injunction, *Kinney v. Pioneer Press*, 881 F.2d 485, 493 (7th Cir.1989), let alone to issue injunctions that authorize or direct people to violate valid federal statutes. Cf. *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir.1985); *NLRB v. Brooke Industries Inc.*, 867 F.2d 434, 435 (7th Cir.1989) (chambers opinion). The decree meant only that the defendants reserved the right to make lawful sales of gentamicin sulfate. The sale of the drug, in powdered as in liquid form, for therapeutic uses, without a license, is unlawful. So this part of the decree provides no support for the defendants' position.

That leaves us with the basic injunction against selling gentamicin sulfate solution. We think it is properly interpreted to reach the powdered equivalent. The elaborate efforts that Rossoff took to conceal the sale of the powder for therapeutic use show his consciousness that the form of the drug was immaterial. Imagine if he had taken the position in negotiations with Schering when the decree was drafted that he would continue to be permitted to sell gentamicin sulfate, only in powdered form—together with instructions to his customers as to how to convert it to liquid form if the particular therapeutic use to which they wanted to put it required that form. It is inconceivable that Schering would have agreed to end its suit on those terms, allowing Rossoff to make millions of dollars by the simple expedient of shifting the simple task of dissolving the drug in water (supposed to be distilled—but many of Rossoff's customers mixed it with drinking water instead, no doubt thinking that pigs and turkeys are not that fussy) to his customers, whom he would instruct about the requisite strength of solution and other details. As there is no indication that Ros-

soff had any defense to Schering's suit, there is no basis for an argument that if Schering had insisted that the decree explicitly forbid the sale of the drug in liquid form for therapeutic uses Rossoff would have refused to consent and forced Schering to obtain a contested decree, which undoubtedly would have fenced in Rossoff more tightly than a consent decree would do.

■ All this is very fine, we anticipate the defendants telling us, but ignores the fact that we are supposed to be reviewing the interpretation of the injunction for abuse of discretion by the district judge, *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 666 (7th Cir.1995), and that whether or not one agrees with the district judge's interpretation it surely cannot be called unreasonable and hence an abuse of discretion. But we have said many times that the term "abuse of discretion" covers a range of degrees of deference rather than denoting a point within that range, e.g., *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir.1991); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 390 (7th Cir.1984), and where a particular case falls in the range depends on the precise character of the ruling being reviewed. When the district judge who is being asked to interpret an injunction is the same judge who entered it and is thus familiar with its history, or when interpretation of the injunction involves the taking of testimony or a piecing together of documents, we should give particularly heavy weight to the district court's interpretation. *Employers Ins. of Wausau v. Browner, supra*, 52 F.3d at 666. None of these conditions is fulfilled in this case. The injunction and its supplement were entered ten and nine years ago, respectively, by a judge who has since resigned. There are no disputed facts, whether bearing on the negotiation or interpretation of the injunction (or supplement) or on anything else germane to this appeal. The injunction and the supplement are separate documents, but there is no inconsistency between them; and anyway the supplement has no bearing on the issue of the liquid versus the powdered form of the drug, which is the only issue before us. The supplement can thus be ignored, leaving the

straightforward task of interpreting a document in light of uncontested facts.

■ The interpretation of documents, including judicial decrees, is, when no factual disputes intrude and no collation of possibly inconsistent documents is required, traditionally an issue of law and one on which, moreover, appellate review is plenary. *Id.* The traditional view, especially the part of it that makes appellate review plenary even though the primary appellate function of maintaining uniformity of legal obligation within the appellate court's jurisdiction is not engaged, has been questioned, *International Ass'n of Machinists v. General Electric Co.*, 865 F.2d 902, 905 (7th Cir.1989), but this is not the right case in which to try to answer the question. For the district judge appears to have based his interpretation of the injunction not on anything specific to this case, anything as to which he might have a greater familiarity than we, but merely on his reading of the cases that discuss the standard for interpreting injunctions. We do not think that the opinions in those cases require so narrow an interpretation of the injunction as the district judge believed them to do. The construal of judicial opinions is a form of legal rather than factual determination, and the review of errors of law in an injunctive proceeding, as in other proceedings, is plenary. *Wisconsin Music Network, Inc. v. Muzak Ltd.*, 5 F.3d 218, 221 (7th Cir.1993); *Thornton v. Barnes*, 890 F.2d 1380, 1385 (7th Cir.1989); *Kinney v. Pioneer Press, supra*, 881 F.2d at 493.

■ There is a further point. Although not emphasized by the parties, the injunction in this case is contained in a consent decree, and a consent decree, at least when it does not trench on the rights or interests of nonparties, is a form of contract, *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148 (1975); *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519, 106 S.Ct. 3063, 3073–74, 92 L.Ed.2d 405 (1986), to which the usual rules governing the interpretation of contracts are at least presumptively applicable. *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1013 (7th Cir.1984) (en banc);

*White v. Roughton,* 689 F.2d 118, 120 (7th Cir.1982). For reasons explained earlier, we think that a proper reconstruction of the parties' intentions requires the bringing of the sale by Rossoff of gentamicin sulfate for therapeutic uses within the scope of their "contract" regardless of the form in which he sells it; and we add that when contractual interpretation is based upon a single document unilluminated by oral testimony, appellate review traditionally is plenary, just as in the case of other documents, *Coplay Cement Co. v. Willis & Paul Group,* 983 F.2d 1435, 1438 (7th Cir.1993), including, as we noted earlier, injunctions entered without the consent of the person enjoined.

The judgment is reversed and the matter returned to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.