**Irving S. ROSSOFF, D.V.M, Individually and d/b/a Rossoff Clinic, d/b/a Llenroc and as President of Illinois Antibiotics Company, a Corporation, Plaintiff,**

v.

**CINCINNATI INSURANCE COMPANY, a Corporation, Defendant.**

No. 97–3374.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 17, 1998.

Thomas W. Lacy, Mark Daniel Thielen, Taylorville, IL, for Plaintiff.

William J. Knapp, Edwardsville, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

A higher court in this case has labeled Plaintiff's efforts to thwart and evade a federal district court's order as "a massive, deliberate, illegal, and unscrupulous effort to circumvent the consent decree...."

Plaintiff now seeks to have his insurer pay the penalty imposed upon him for violating that order.

His insurance policies, however, do not provide coverage for such conduct—which the reviewing court called "shocking."

Plaintiff must pay.

## I. BACKGROUND[1]

Irving S. Rossoff, D.V.M, is a veterinarian and the principal owner and operator of Illinois Antibiotics Company ("IACO"), an Illinois corporation located in Taylorville, Illinois. Cincinnati Insurance Company ("Cincinnati") is an insurance company authorized to do business in the state of Illinois but is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

Since September 2, 1983, Cincinnati has issued a total of five insurance policies to Dr. Rossoff. Policy number CPP 54 92 30 was in effect from September 2, 1983 through September 2, 1991, and contained coverages for commercial general liability, veterinarian's professional liability, and hired automobile and non-owned automobile liability. Policy number CPP 044 16 48 was in effect from September 2, 1991 through September 2, 1996, and continued the coverages set forth in policy number CPP 54 92 30. Finally, policy numbers CCC 287 9430, CCC 251 7252, and CCC 433 2717 were professional umbrella liability policies and provided coverage for personal injury, property damage, advertising liability, and professional liability similar to that provided under policy number CPP 54 92 30.

In February 1983, the Schering Corporation ("Schering") filed a Complaint in the United States District Court for the Northern District of Illinois against Rossoff, IACO, and others seeking damages and injunctive relief based upon Rossoff's and IACO's alleged improper and illegal sales and distribution of gentamicin sulfate. In July 1985, via a consent order entered by United States

---

1. Because Plaintiff failed to file a timely response to Defendant's statement of undisputed facts as required by Local Rule 7.1(D)(2), the Court will deem all of Defendant's statements of undisputed facts as being admitted by Plaintiff. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922–24 (7th Cir.1994).

District Judge Frank J. McGarr and a separate settlement agreement reached among the parties, Rossoff and IACO agreed to refrain from selling gentamicin sulfate reagent solution for therapeutic use in animals unless and until the solution had been approved for such use by the Food and Drug Administration ("FDA").

In May 1993, Schering filed a petition for a rule to show cause why Rossoff and IACO should not be held in contempt of court for violating Judge McGarr's order.[2] Schering's petition alleged that Rossoff and IACO were selling gentamicin sulfate in violation of Judge McGarr's order. After considering the petition, United States District Judge William T. Hart dismissed Schering's petition, finding that Judge McGarr's order did not encompass and/or enjoin Rossoff and IACO from selling gentamicin sulfate in powder form.

However, the United States Court of Appeals for the Seventh Circuit reversed Judge Hart's decision, finding that Rossoff's and IACO's conduct violated Judge McGarr's consent order. *Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 909 (7th Cir. 1995). Accordingly, the Seventh Circuit remanded the case to Judge Hart for further proceedings.

On remand, Judge Hart entered judgment against Rossoff and IACO, finding them guilty of civil contempt for violating Judge McGarr's consent order. Accordingly, Judge Hart ordered Rossoff and IACO to pay Schering $1,398,600.00 plus attorney's fees and costs in the amount of $193,516.00. The Seventh Circuit subsequently affirmed this judgment. *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d 357 (7th Cir.1996). However, in September 1996, Rossoff and IACO entered into another settlement agreement with Schering wherein Rossoff and IACO agreed to pay Schering $850,000.00 in settlement of the claims between them.

In the meantime, on July 31, 1996, Rossoff made a demand on his insurance broker, Kinsella, McNeeley, Ryan, and Markwell, Inc., to notify Cincinnati of his assertion that the judgment entered against him by Judge Hart may fall within the coverage of one of the policies of insurance issued by Cincinnati. This letter constituted the first notice to Cincinnati that Rossoff was asserting any claim for coverage under any of the policies which Cincinnati had issued to him for the disputes between Rossoff and Schering. On August 28, 1996, Cincinnati sent a reservation of rights letter to Rossoff setting forth the provisions of the subject policies of insurance regarding notice of claims and further reserving all rights pending its investigation of Rossoff's claim.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine

2. Evidently, Schering learned about Rossoff's and IACO's alleged violations of Judge McGarr's consent order when the United States Attorney's Office indicted Rossoff in 1991 for allegedly selling gentamicin without first securing the approval of a new animal drug application from the FDA.

issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

Defendant argues that it is entitled to summary judgment for two reasons. First, Defendant asserts that the insurance policies issued by it to Plaintiff do not provide coverage for, nor do they create a duty to defend or indemnify Plaintiff for his claims regarding the judgment entered against him by Judge Hart. Second, Defendant claims that even if the policies provided coverage for his claims and even if the policies did create a duty to defend and/or indemnify him, Plaintiff's failure to provide it with a timely notice of the occurrence of the lawsuit between him and Schering constituted a breach of the prerequisite for coverage under the policies, relieving it from any duty to defend and/or indemnify him regarding his claim. Accordingly, Defendant asks the Court to enter summary judgment in its favor and to find that there is no coverage for Plaintiff's claims under any of the policies issued by it, that it does not have a duty to defend and/or indemnify Plaintiff for any of his claims for coverage arising from his disputes with Schering, and to find that it does not have to reimburse Plaintiff for any attorney's fees, expenses, costs, or disbursements in connection with the claims brought by Schering against Plaintiff or for the judgment or settlement entered into between Schering and Plaintiff.

Plaintiff argues that the Court should deny Defendant's motion for four reasons. First, Plaintiff asserts that the Court should deny Defendant's motion until it produces the insurance policies at issue. Plaintiff claims that until he has had an adequate opportunity to review these insurance policies, the Court should stay ruling upon Defendant's motion. Second, Plaintiff argues, contrary to Defendant's claim, that he did timely notify James P. Markwell, Defendant's agent, of the facts underlying his claim for coverage, *i.e.*, Schering's petition for a rule to show cause filed with Judge Hart.

Third, Plaintiff claims, again contrary to Defendant's assertion, that his conduct did not invalidate the coverage under the policies issued to him by Defendant. Fourth, Plaintiff asserts that the policies issued by Defendant contemplated and provided coverage for the civil contempt judgment entered by Judge Hart, including coverage for attorney's fees and costs. Accordingly, Plaintiff asks the Court to deny Defendant's motion.

The Court finds that Defendant is entitled to summary judgment. First, the Court finds that none of the policies issued by Defendant to Plaintiff provide coverage for, a duty to defend, or a duty to indemnify Plaintiff for his claim arising from the judgment entered against him by Judge Hart. Second, assuming, *arguendo*, that the policies issued by Defendant did provide coverage for, a duty to defend, or a duty to indemnify Plaintiff, the Court finds that Plaintiff's failure to timely notify Defendant of the suit underlying his claim, *i.e.*, the suit between Schering and Plaintiff, constituted a breach of the insurance policy, relieving Defendant of any duty to defend or indemnify Plaintiff.

### A. TERMS OF THE POLICIES

In Illinois,

[i]t is now well-established law that, in determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action.

*Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 393, 620 N.E.2d 1073, 1079, 189 Ill.Dec. 756, 762 (Ill. 1993); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108, 607 N.E.2d 1204, 1212, 180 Ill.Dec. 691, 699 (Ill.1992).

However, in the instant case, Plaintiff's claim for coverage stems ultimately from the violation of the consent order issued by Judge McGarr rather than from his Complaint. Judge McGarr's order provided in relevant part:

Rossoff and IACO are each hereby permanently enjoined from selling or distributing gentamicin sulfate reagent solution for therapeutic use in animals unless such reagent solution is expressly approved for such use by the FDA. This permanent

injunction is binding upon Rossoff and IACO and the employees, affiliates, representatives, divisions, subsidiaries, successors and/or assigns of each of them.

Therefore, the relevant comparison is between the terms of the consent order and the terms of the insurance policies issued to Plaintiff by Defendant.

The Court has reviewed Plaintiff's policies and cannot find any provision(s) which would provide coverage for Plaintiff's claim regarding his suit with Schering. Notably, in his response to Defendant's motion for summary judgment, Plaintiff has failed to point to any provision in any of the policies which would provide coverage for his claim. The Court believes that Plaintiff has failed to do so because the policies contain no such provision(s).

Plaintiff argues that he cannot point the Court to any provision in the policies which would substantiate his claim because Defendant has refused to provide him with certified copies of the insurance policies. Thus, Plaintiff asserts that the Court should refrain from ruling upon Defendant's motion until Defendant produces the policies at issue and until he has had an opportunity to review those policies.

However, Defendant has provided Plaintiff with copies of the policies at issue, and Plaintiff has had ample opportunity to review those policies. Plaintiff's assertion that he has not been provided with a copy of the policies is belied by answer to Defendant's counterclaim. In his response to paragraph 4 of Defendant's counterclaim, Plaintiff admits to having received the copies of the insurance policies which were attached to Defendant's counterclaim, and he admits that those are the policies which Defendant issued to him and are at issue in this case.

In addition, Defendant filed his counterclaim on November 4, 1997. Defendant did not file his motion for summary judgment, however, until June 1, 1998. Therefore, Plaintiff has had ample opportunity to review the policies' terms prior to having to respond to Defendant's motion for summary judgment.

■ Plaintiff's general liability policies provided coverage to Plaintiff for bodily injury and property damages. "Bodily injury" was defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." "Property damage" was defined as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is cause by an occurrence during the period." "Occurrence" was defined as "an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Plaintiff's professional liability policies provided coverage "for any claim or suit for damages, at any time filed, based on professional services rendered or which should have been rendered, by the insured or any other person, in the practice of the insured's profession, during the term of this endorsement."

Based upon these terms, the Court cannot say that the policies provided coverage for Plaintiff in case he was adjudged to be in civil contempt. In construing an insurance policy, the Court must attempt to ascertain the intent of the parties, construing the policy as a whole in order to give due regard to the risks undertaken and the purpose of the policy. *Crum*, 156 Ill.2d at 391, 620 N.E.2d at 1078, 189 Ill.Dec. at 761; *Outboard Marine*, 154 Ill.2d at 108, 607 N.E.2d at 1212, 180 Ill.Dec. at 699. The Court finds, based upon the terms of the policies, that the parties did not contemplate or contract to insure against the risk that Plaintiff would be held in contempt of court for violating a federal court's order. In fact, the Court finds Plaintiff's claim under the general liability policies for coverage to be incredible.

■ Likewise, the Court finds that Plaintiff's professional liability policies do not provide coverage for his claim. In a similar case, the Illinois Supreme Court held that a real estate broker's professional liability policy did not provide coverage for intentional business torts or claims of unfair business practices. *Crum*, 156 Ill.2d at 391–93, 620

N.E.2d at 1077–78, 189 Ill.Dec. at 761–62. In so holding the Illinois Supreme Court opined:

> Although there may be a myriad of risks to which one performing services in a real estate professional capacity may be exposed, covered risks are only those which inherently arise out of the rendering of the real estate services.... There must be a direct, causal relationship between the insured's performance of real estate services and the underlying claims made against the insured in order for the claims to be covered under these policies at issue.

*Id.* at 393, 620 N.E.2d at 1078–79, 189 Ill. Dec. at 761–62.

In the case *sub judice,* Plaintiff's decision to sell gentamicin in violation of Judge McGarr's consent order was a business decision, not a professional one. The Court fails to see the direct, causal relationship between the violation of the consent order and Plaintiff's professional responsibilities as a veterinarian. "[T]he risk of conducting one's business in an unfair and tortious manner", such as by violating a federal judge's order by selling antibiotics in violation of federal law, is not a risk which is inherent to the practice of veterinary medicine. *Id.* at 394, 620 N.E.2d at 1079, 189 Ill.Dec. at 762.

Plaintiff further argues that he is the president of Illinois Antibiotics Company. Illinois Antibiotics Company sells antibiotics such as gentamicin. Therefore, Plaintiff asserts that his claim was reasonably foreseeable to Defendant and constituted a type of risk for which he sought and obtained insurance from it.

However, although insurance coverage for the sale of antibiotics may have been contemplated by the parties, the Court does not believe that the unlawful sale of antibiotics in violation of a federal court's order was or could have been contemplated by the parties. The lack of foreseeability for Plaintiff's claim is best illustrated by the Seventh Circuit's language in *Schering.* In *Schering,* the Seventh Circuit characterized Plaintiff's conduct as an elaborate, "massive, deliberate, illegal, and unscrupulous effort to circumvent the consent decree, in the process endangering animal and possibly even human health." *Schering,* 62 F.3d at 906. It is hard to imagine how the parties could have contemplated such a scenario as described by the

Seventh Circuit when entering into these insurance contracts.

■ Furthermore, the Court believes that if it were to find coverage under these circumstances, such a finding would violate public policy. The Seventh Circuit has held that "(a) contract of insurance to indemnify a person for damages resulting from his own intentional misconduct is void as against public policy and the courts will not construe a contract to provide such coverage." *Solo Cup Co. v. Fed. Ins. Co.,* 619 F.2d 1178, 1187 (7th Cir.1980), quoting *Industrial Sugars, Inc. v. Standard Accident Ins. Co.,* 338 F.2d 673, 676 (7th Cir.1964); *Affiliated FM Ins. Co. v. Beatrice Foods Co.,* 645 F.Supp. 298, 302 (N.D.Ill.1985).

■ Plaintiff does not argue that he unintentionally violated Judge McGarr's consent order and with good reason. The Seventh Circuit all but concluded that Plaintiff intentionally violated the consent order when it stated that "[t]he elaborate efforts that Rossoff took to conceal the sale of the powder for therapeutic use show his consciousness that the form of the drug was immaterial." *Schering,* 62 F.3d at 907. Rather, Plaintiff asserts that he did not violate the consent order at all.

However, Plaintiff presented that claim to and it was rejected by the Seventh Circuit. *See Schering,* 62 F.3d at 907–08 (holding that Plaintiff's sale of gentamicin in powder form violated the consent order). Thus, Plaintiff is barred by the doctrine of *res judicata* from re-arguing this claim before this Court. *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307 (7th Cir. 1995); *In Re Cook,* 49 F.3d 263, 266 (7th Cir.1995). Accordingly, the Court finds that the terms of the policies do not provide coverage for Plaintiff's claims regarding his disputes with Schering.

### B. *NOTIFICATION*

■ Even assuming, *arguendo,* that the policies issued by Defendant provided coverage for, a duty to defend, and/or a duty to indemnify Plaintiff, Plaintiff's failure to timely notify Defendant of the suit underlying his claim, *i.e.,* the suit between Schering and Plaintiff, constituted a breach of the insur-

ance policy, relieving Defendant of any duty to defend or indemnify Plaintiff. In Illinois, "[n]otice of occurrence provisions in insurance liability policies are valid prerequisites to coverage. A provision calling for notice 'as soon as practicable' requires notification to the insurer within a reasonable time." *State Sec. Ins. Co. v. Burgos,* 145 Ill.2d 423, 431, 583 N.E.2d 547, 551, 164 Ill.Dec. 631, 635 (Ill.1991) (internal citations omitted).

Moreover, the failure to timely notify the insurer of an occurrence relieves the insurer of any duty to defend or indemnify the insured. *Industrial Coatings Group, Inc. v. Am. Motorists Ins. Co.,* 276 Ill.App.3d 799, 807, 658 N.E.2d 1338, 1343, 213 Ill.Dec. 317, 322 (1995). As Illinois courts have explained:

> The duty to notify arises on the day the insured received information regarding an alleged incident which potentially might be covered under the insurance policy. The key element of the duty to notify is the appearance to a reasonably prudent person that a claim potentially covered by the policy "may be brought against the insured and not the appearance that the insured, in fact, may be liable." (*National Bank v. Winstead Excavating of Bloomington* (1981), 94 Ill.App.3d 839, 842, 50 Ill.Dec. 414, 416, 419 N.E.2d 522, 524.) The test is whether any reasonably prudent person "could foresee a lawsuit" and would either contact his attorney or his liability carrier. *Twin City Fire Insurance Co. v. Old World Trading Co.* (1993), 266 Ill.App.3d 1, 7, 203 Ill.Dec. 264, 268, 639 N.E.2d 584, 588, appeal denied (1994), 158 Ill.2d 566, 206 Ill.Dec. 847, 645 N.E.2d 1369.

*Id.*

Each of Plaintiff's insurance policies issued by Defendant contained notice provisions requiring Plaintiff to notify Defendant of an occurrence "as soon as practicable" or "as soon as possible." In addition, the policies required Plaintiff to immediately forward all demands, notices, or summonses relating to any lawsuit. Therefore, the Court must determine whether, under the facts and circumstance, Plaintiff provided Defendant timely notice of his claim with regard to the Schering suit. *State Sec. Ins.,* 145 Ill.2d at 431, 583 N.E.2d at 551, 164 Ill.Dec. at 635.

Plaintiff argues that he did provide timely notice to Defendant. Plaintiff asserts that he immediately contacted Defendant's agent, James Markwell, upon learning that Schering had filed a petition for a rule to show cause with Judge Hart. Moreover, based upon his prior dealings with Markwell, Plaintiff claims that he did not believe that a written notice of his claim was necessary.

However, the Court cannot say that Plaintiff timely notified Defendant of the "occurrence." First, it is highly questionable whether Markwell was Defendant's agent, thereby possessing the authority to bind Defendant. *State Sec. Ins.,* 145 Ill.2d at 431–32, 583 N.E.2d at 551, 164 Ill.Dec. at 635. During his deposition, Markwell acknowledged that he, through Kinsella, McNeeley, Ryan, and Markwell, Inc., represented approximately 20 insurance companies and that he was an independent contractor having limited authority to deal on behalf of a given insurance company. In addition, Markwell admitted that he did not have the authority to bind, nor did he have the authority to settle liability claims for Defendant. If Markwell was merely a broker rather an agent, Markwell's knowledge of Plaintiff's occurrence may not be imputed to Defendant. *Economy Fire & Cas. Co. v. Bassett,* 170 Ill.App.3d 765, 771, 525 N.E.2d 539, 543, 121 Ill.Dec. 481, 485 (1988).

Nevertheless, the Court need not decide whether Markwell was a broker or an agent because Markwell admitted that the first time he ever became aware that there was a civil suit pending between Plaintiff and Schering was either in late 1995 or early 1996. Moreover, even when he learned of the suit, Markwell did not believe (until he received the July 31, 1996 letter) that Plaintiff wanted to make a formal claim on any of the policies issued by Defendant.[3]

By waiting at least three years[4] prior to notifying Defendant of his claim for coverage,

---

**3.** In addition, the Court has deemed admitted Defendant's statement of undisputed fact number 14 which asserts that the July 31, 1996 letter constituted the first notice Defendant received from Plaintiff which asserted any claim for cov-erage under any of the policies issued by Defendant for the dispute arising between him and Schering.

**4.** Schering filed its petition for a rule to show cause before Judge Hart on May 21, 1993; Plain-

**1102**

Plaintiff breached the prerequisite for coverage of timely notifying Defendant of an occurrence.[5] *See Industrial Coatings,* 276 Ill. App.3d at 809, 658 N.E.2d at 1345, 213 Ill. Dec. at 324 (holding that a 14 month delay was unreasonable); *see also Hartford Cas. Ins. Co. v. Snyders,* 153 Ill.App.3d 1040, 1043, 506 N.E.2d 627, 629, 106 Ill.Dec. 827, 829 (1987) (holding that a 13 month delay was unreasonable); *see also Equity Gen. Ins. Co. v. Patis,* 119 Ill.App.3d 232, 237, 456 N.E.2d 348, 352, 74 Ill.Dec. 846, 850 (1983) (holding that a five month delay was unreasonable); *see also Illinois Valley Minerals Corp. v. Royal–Globe Ins. Co.,* 70 Ill.App.3d 296, 300–01, 388 N.E.2d 253, 256–57, 26 Ill. Dec. 629, 632–33 (1979) (holding that a six month delay was unreasonable).

Furthermore, because Plaintiff failed to timely notify Defendant of the occurrence, Defendant suffered prejudice in that it was unable to investigate the facts, assess the loss, and participate in the law suit surrounding Plaintiff's claim. *Kerr v. Illinois Central R.R. Co.,* 283 Ill.App.3d 574, 584–85, 670 N.E.2d 759, 767, 219 Ill.Dec. 81, 89 (1996). Accordingly, the Court finds that Plaintiff's failure to timely notify Defendant of the occurrence relieved Defendant of its duty to defend and/or indemnify him.

Therefore, when taking all of the evidence in a light most favorable to Plaintiff, the Court finds that there are no genuine issues of material fact to be determined by the trier of fact and that Defendant is entitled to judgment as a matter of law.

*Ergo,* Defendant's Motion for Summary Judgment is ALLOWED. Specifically, the Court finds: (1) that the insurance policies issued by Defendant to Plaintiff do not provide coverage for the disputes arising between Schering and Plaintiff (or IACO) or for the judgment or settlement agreement entered into between Schering and Plaintiff (or IACO); (2) that Defendant does not owe Plaintiff a duty to defend or to indemnify him in connection with the disputes between Schering and Plaintiff (or IACO) or for the judgment or settlement agreement entered into between Schering and Plaintiff (or IACO); and (3) that Defendant does not have to reimburse Plaintiff (or IACO) for any attorney's fees, expenses, costs, or disbursements in connection with the dispute between Schering and Plaintiff (or IACO) or for the judgment or settlement agreement entered into between Schering and Plaintiff (or IACO). Accordingly, pursuant to Federal Rule of Civil Procedure 56, summary judgment is hereby entered in favor of Defendant and against Plaintiff.

---

tiff did not notify Defendant of the occurrence until August 1, 1996.

**5.** One could make an argument that if Plaintiff intended to seek coverage for his disputes with Schering, he should have notified Defendant of the occurrence in February 1983 when Schering filed the original suit which formed the basis of Judge McGarr's consent order.