DECISION
The Plaintiff, Pennsylvania General Insurance Company, ("Pennsylvania General") moves for summary judgment on its claim against the Defendant, Matthew Taliercio, ("Taliercio") pursuant to Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure. Pennsylvania General seeks a declaration of "no coverage" for Taliercio's claim of uninsured motorist ("UIM") coverage benefits arising from an automobile accident wherein Taliercio was injured. For the reasons discussed herein, Pennsylvania General's motion is denied.
 I Facts and Travel
The automobile insurance policy in question was issued to the father of Taliercio for the period from December 12, 1998 to June 12, 1999 (the "Policy"). Being fifteen years old at the time and as a resident of his father's household, Taliercio had UIM coverage benefits arising under this Policy. On March 9, 1999, Taliercio, while riding as a passenger, sustained personal injuries as a result of a single car automobile accident that occurred in Providence, Rhode Island. The vehicle, which struck a pole, was owned by Dino Guerrini ("Guerrini") and operated by Joel Garcia ("Garcia"). In their investigation of this accident, the Providence Police Department determined that the motor vehicle operated by Garcia had been stolen and was not being operated with the consent of the owner. *Page 2 
During his deposition, Taliercio testified that Garcia, a friend, picked up him and two young female friends from another friend's house around 9:30 pm and drove around unsupervised for approximately two hours. After dropping off the two females around 11:30 pm, Taliercio and Garcia continued driving around various cities, including Providence and Cranston, effectuating periodic stops at various locations. Detective Nancy Santopadre, ("Detective Santopadre") in her deposition and in a report dated March 10, 1999, stated that on the night of the accident Taliercio told her that he and Garcia had been smoking marijuana in the car as well. As the night progressed, Taliercio stopped "having fun" and became scared because "things started to get dangerous" and expressed to Garcia a desire to go home. However, Taliercio never left the vehicle or tried to find another way to get home. Later that night, Taliercio blacked out and at a subsequent point in the evening, the vehicle struck a pole, causing Taliercio to suffer personal injuries.
The first police response to the scene of the accident was Patrolman Danilo Adopante ("Patrolman Adopante"). Patrolman Adopante observed Taliercio to be alone and unconscious in the passenger seat. Upon being awakened by Patrolman Adopante, Taliercio attempted to flee the scene, but was restrained by Patrolman Adopante. After refusing medical treatment, Taliercio was brought to the police station where the aforementioned discussion with Detective Santopadre took place. While at the station, but before receiving medical treatment, Detective Santopadre testified that Taliercio told her that he had "smoked a few blunts" and that "he knew [the vehicle] was stolen, but he did not steal it." Taliercio testified that he never knew the true owner of the vehicle, did not know how Garcia started the vehicle, and that there were no discussions between Garcia and Taliercio regarding who owned the vehicle. The Providence *Page 3 
Police Department later charged Taliercio with driving without consent of the owner.[1] This charge was later dropped because the owner, Dino Guerrini, did not appear in court for medical reasons.
As a result of the accident, Taliercio has undergone knee surgery, sustained some hearing loss, and continues to experience the effects of his injuries. Taliercio has subsequently made a claim against Pennsylvania General for UIM coverage alleging that at the time of the accident, the vehicle operated by Garcia was uninsured. Pennsylvania General subsequently filed a Complaint, seeking a declaratory judgment that it is not obligated to pay Taliercio any sum under the UIM coverage of the Policy due to the fact that Taliercio's use of the uninsured vehicle was done without a reasonable belief that he was entitled to use the vehicle. Taliercio answered and filed a Counterclaim seeking a judgment holding that Pennsylvania General is liable for all sums up to and beyond the Policy limits as well as costs in litigation.
Pennsylvania General moves for summary judgment, arguing that Taliercio's injuries are not covered by the UIM provision of the Policy because Taliercio used the vehicle while knowing that the vehicle was stolen — thus, falling within an exclusion of the UIM provision. Taliercio responds by maintaining there exists material disputed issues of fact that preclude the grant of summary judgment at this time.
 II Standard of Review
On a summary judgment motion, this Court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Chavers v. Fleet Bank (RI), N.A.,844 A.2d 666, 669 (R.I. 2004). On such a motion, the Court is to determine only whether a factual issue exists. It is not permitted to resolve any such factual issues. The *Page 4 
emphasis is on issue finding, not issue determination.O'Connor v. McKanna,116 R.I. 627, 633, 359 A.2d 350, 353 (1976); Palazzo v. Big GSupermarkets, Inc., 110 R.I. 242, 245, 292 A.2d 235, 237 (1972);Slefkin v. Tarkomian, 103 R.I. 495, 496, 238 A.2d 742 (1968). "Summary judgment is appropriate if it is apparent that no material issues of fact exist and the moving party is entitled to judgment as a matter of law." Chavers, 844 A.2d at 669. A party opposing a motion for summary judgment "`carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" Id. at 669-70 (quotingUnited Lending Corp. v. City of Providence,827 A.2d 626, 631 (R.I. 2003)).
 III Analysis
In support of their motion, Pennsylvania General's central argument is that Taliercio's injuries are not covered by the UIM provision of the Policy because Taliercio allegedly used the vehicle while knowing that the vehicle was stolen — thus, falling within an exclusion (the "Exclusion") of the UIM provision. Being both significant and concise, the applicable UIM language from the Policy is excerpted below:
 PART C — UNDERINSURED MOTORIST COVERAGE
 INSURING AGREEMENT
 A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
 1. Sustained by an insured; and
 2. Caused by an accident.
 The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
 B. . . .
 EXCLUSIONS
 A. . . . *Page 5 
 B. We do not provide Uninsured Motorist Coverage for bodily injury sustained by any insured:
 1. . . .
 2. . . .
 3. Using a vehicle without a reasonable belief that the insured is entitled to do so.
Pennsylvania General argues that Taliercio, under both a subjective standard and an objective standard, did not have a reasonable belief that he was entitled to use the vehicle the night of the accident. To show Taliercio did not have a subjective belief that he was entitled to use the vehicle, Pennsylvania General asserts Taliercio's voluntary admission, according to Detective Santopadre, shortly after the accident that he knew the vehicle was stolen. To show Taliercio did not have an objective belief that he was entitled to use the vehicle, Pennsylvania General points generally to Taliercio's various statements concerning the events of that night, the fact that the police determined the vehicle had ignition damage, [2] and the fact that Taliercio was subsequently charged with a crime by the Providence Police Department which involves driving a vehicle without the consent of the owner. Thus, Pennsylvania General asserts that 1) Taliercio was aware that the vehicle was stolen, 2) Taliercio had no reasonable belief that he was entitled to use the car, and 3) the Exclusion above applies, thus relieving Pennsylvania General of its obligation to pay Taliercio any sum under the UIM coverage of the Policy.
Taliercio disputes Pennsylvania General's arguments by asserting a material disputed issue of fact exists that preclude the grant of summary judgment. The primary disputed issue is whether Taliercio had a reasonable belief that he was not entitled to use the vehicle during the night of the accident. Taliercio, in an effort to present a genuine issue of material fact, calls into question the voluntary admission by himself to Detective Santopadre by presenting an affidavit wherein Taliercio swears under oath that "at no time prior to entering, traveling in, and being *Page 6 
injured in, was I aware or did I know the vehicle operated by Joel Garcia on March 9, 1999 was stolen." Taliercio also contends that he, as a scared fifteen-year-old who didn't know where he was, acted reasonably in not leaving the vehicle on his own accord. Furthermore, Taliercio asserts that whether or not the vehicle had ignition damage is disputed, citing conflicting reports by Patrolman Adopante.
Taliercio also petitions the Court to take his age, experience, intelligence and maturity into account when determining what constitutes a "reasonable belief." Taliercio contends that the reasonable child standard is much more "subjective than the adult reasonable person standard as it allows the jury to consider the child's specific qualities such as experience and intelligence."
As a preliminary matter, this Court must first determine whether a person, simply riding in a vehicle as a passenger, is "using" the vehicle in such a way that would preclude them from uninsured motorist coverage per the Exclusion language. Our Supreme Court has held that before this Court can construe the provisions of an insurance policy, this Court must find that an ambiguity exists.Bush v. Nationwide Mutual Insurance Co.,448 A.2d 782, 784 (R.I. 1990). To determine whether an ambiguity in an insurance policy exists, the policy is viewed in its entirety and the language employed is given its "plain, ordinary and usual meaning." Amica Mutual Insurance Co. v. Streiker,583 A.2d 550, 552 (R.I. 1990). As a passenger in a vehicle would normally be considered "using" the vehicle, this Court determines that the policy is unambiguous; and considers Taliercio as having used the vehicle during the evening of the accident — thus, bringing the Exclusion language into play. In a nearly identically-worded Exclusion provision, the Connecticut Supreme Court held that "using" "is not ambiguous, and . . . includes riding as a passenger."Aetna Life Casualty Company v. Bulaong, 588 A.2d 138, 143 *Page 7 
(Conn. 1991). Finally, Taliercio himself does not dispute or contest the fact that he was "using" the vehicle as a passenger the night of the accident.
In determining whether to grant or deny summary judgment, this Court must determine whether there exists a disputed issue of material fact. Here, the main issue is whether Taliercio held a reasonable belief that he was entitled to use the vehicle in which he was a passenger on the night of the accident. While there is some evidence to support the assertion that Taliercio was well aware that he was not entitled to use the vehicle, there exists sufficient contrary evidence that adequately puts this issue into dispute.
First, Taliercio asserts a material issue of fact as to his belief by submitting to the Court an affidavit in which he denies ever being aware or knowing that the vehicle was stolen. This affidavit appears to contradict Pennsylvania General's main contention that Taliercio had a reasonable belief that the vehicle was stolen, as evidenced in his statement to Detective Santopadre shortly after the accident. Pennsylvania General claims that this affidavit fails to contradict Detective Santopadre's testimony. Pennsylvania General asserts that, rather than stating that Taliercio never told Detective Santopadre that the vehicle was stolen, the affidavit simply states that at no time did Taliercio absolutely know the vehicle was stolen. Pennsylvania General attempts to dismiss this affidavit by arguing that the case is not about what Taliercio knew at the time, but what he believed. In other words, Pennsylvania General argues that both statements could be true, i.e., that on the night of the incident, Taliercio could have believed the vehicle was stolen, and informed Detective Santopadre of such, while not ever actually knowing the vehicle was stolen. Thus, Taliercio could honestly attest in his affidavit that he never actually knew that the vehicle was stolen.[3] *Page 8 
While subtle, this distinction is important. Whether or not the Exclusion provision applies — thus, precluding Taliercio from any coverage for his injuries — depends on whether Taliercio "Us[ed the] vehicle without a reasonable belief that [he was] entitled to do so." The determination of whether Taliercio was without reasonable belief that he was entitled to use the vehicle is a factual determination reserved for a fact-finder. Taliercio, as the non-moving party, by virtue of this affidavit, has presented sufficient evidence to prove the existence of a disputed material issue of fact that would enable this suit to survive summary judgment.
Second, while there was some debate between the opposing parties as to the utilization of a special "reasonable child" standard to determine whether Taliercio had a reasonable belief that he was entitled to use the vehicle. Taliercio claims that because he was a minor at the time, this Court should use a standard that compares his conduct to other reasonable children of the same age, experience, and intelligence under like circumstances. Pennsylvania General asserts that while this alternative analysis may be applicable in a negligence action, it is here irrelevant because this case is a contract action. Regardless of whether a regular adult standard of reasonableness or a special "reasonable child" standard is used, there still persists a disputed issue of fact — whether Taliercio had a reasonable belief that he was entitled to use the vehicle at the time of the accident.
Finally, while not mentioned by either party, it is possible that Taliercio formulated his belief that the vehicle was stolen during the time period after the accident and before his discussion with Detective Santopadre. In other words, while riding as a passenger in the vehicle, Taliercio may not have been aware the vehicle was stolen, and thus, had a reasonable belief that he was entitled to use the vehicle. However, due to the interactions with the police officers at the scene of the accident and afterwards, Taliercio could have gathered enough clues regarding the *Page 9 
vehicle and the circumstances surrounding the accident to formulate a belief that the vehicle was in fact stolen. The veracity of this or other potential scenarios should be determined, not by the Court at this juncture, but the fact-finder.
While the unique facts and circumstances of this case require this Court to deny Pennsylvania General's motion for summary judgment, it is important to recognize the valid purpose behind such exclusionary language of UIM provisions. The intent of such exclusions are to ensure that individuals who are injured while using a vehicle that they are not entitled to use are disqualified from making a claim from their insurance provider. Insurance providers who provide UIM coverage to their policy holders should be able to avoid, through properly drafting of the insurance policy, the obligation to compensate policy holders who use vehicles illegally or in bad faith. Had this case presented a factual situation where there was no dispute of material fact that Taliercio lacked a reasonable belief that he was entitled to use the vehicle, summary judgment would have been granted due to the unambiguous language in the Policy. In support of good public policy, this Court will not allow someone to insure themselves while engaged in illegal or unethical behavior. As the Honorable Judge Roger Kiley of the United States Court of Appeals for the Seventh Circuit declared, "a contract of insurance to indemnify a person for damages resulting from his own intentional misconduct is void as against public policy and the courts will not construe a contract to provide such coverage."[4]
 VI Conclusion
Because there is an actual dispute as to whether the Defendant had a reasonable belief that he was entitled to use the vehicle, there is a question of fact that should not be decided as a *Page 10 
matter of law by this Court. Thus, Pennsylvania General's motion for summary judgment on its claim seeking declaration of "no coverage" is denied.
[1] In violation of R.I. Gen. Laws §§ 31-9-1 and 31-27-13.
[2] Taliercio testified in his deposition that he wasn't sure how Garcia started the car, but did remember at some point Garcia had used a key. When asked how the steering column was damaged, he testified that he was "not even sure."
[3] The affidavit is dated February 15, 2010.
[4] Industrial Sugars, Inc. v. Standard Acc. Ins. Co.338 F.2d 673, 676 (Ill. 1964).